395 So.2d 709 (1981)
STATE in the Interest of the Minors Russell J. GIANGROSSO, Lonnie Ray J. Gros, Scott N. Hood.
No. 80-C-1793.
Supreme Court of Louisiana.
March 2, 1981.
*711 Benjamin C. Vega, Jr., Donaldsonville, Alan J. Robert, Gonzales, for defendants-applicants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Aubert D. Talbot, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-respondent.
LEMMON, Justice.
Three male juveniles were adjudicated as delinquents based on violation of R.S. 14:42.1, pertaining to forcible rape.[1] Their adjudications were affirmed on appeal. 385 So.2d 471 (La.1980). The juveniles then filed an application for certiorari. In addition to complaining of trial court error in exempting investigating officers from sequestration and in limiting cross-examination by two defense counsel (who represented different clients), the application pointed out inconsistencies between the testimony of the three victims of the alleged rapes and the other evidence. We granted certiorari to review the ruling complained of and to determine the possible prejudicial effect of those rulings in a case where choice of credibility is the critical issue. 392 So.2d 666.

I.
The incident which gave rise to the charges began as a relatively harmless frolic among a group of teenage boys and girls at a fair in Ascension Parish, but wound up with accusations of forcible rape. Three teenage girls had met two of the boys at the fair, and they were later joined by two other boys. The group, traveling in two vans driven by two of the boys, eventually proceeded to a spot behind the levee on the banks of the Mississippi River.
The testimony as to the events which thereafter occurred is in significant conflict. Defendants conceded at their adjudication hearing that they engaged in sexual intercourse with two of the girls, but testified that the girls voluntarily participated. All three of the girls (including the girl who did not engage in sexual intercourse) described the incident very differently. Although they admitted they voluntarily accompanied the boys to the isolated spot behind the levee, they testified that one of the boys forcibly raped one of the girls and that all three of the boys then forcibly raped a second girl.
In resolving the conflicting versions of the incident, the trial judge credited the young girls' testimony and adjudicated the three defendants to be delinquent. C.J.P. arts. 13(7) and 76(A).
The court of appeal affirmed, rejecting defendants' various complaints about the conduct of the adjudication hearing and finding that the evidence was sufficient to support the adjudication under State in the Interest of Baptiste, 367 So.2d 784 (La. 1979).

II.
At the commencement of the adjudication hearing counsel for the petitioners moved that the witnesses be sequestered. C.J.P. art. 69. The trial court granted the motion and placed the witnesses under the rule, but upon motion by the prosecutor the trial judge exempted from the rule the deputies who investigated the case.[2] See F.R.Ev. 615(2).
The Code of Juvenile Procedure essentially tracks the provisions of the codes of criminal and civil procedure, which mandate sequestration upon motion of a party, but leave to the court some discretion to exempt particular witnesses "in the interest of justice". See C.Cr.P. art. 764; C.C.P. art. 1631; State v. Lewis, 250 La. 876, 199 So.2d 907 (1967). By choosing the language mandating sequestration upon request, the Legislature chose not to place the burden on the party requesting sequestration to *712 show that he would be prejudiced by denial. Compare State v. Carter, 206 La. 181, 19 So.2d 41 (1944); State v. Lewis, above.[3] And by making exemption from sequestration discretionary with the court, the Legislature placed the burden on the party seeking the modification to show that the "interest of justice" would be served by exempting the witness.
Here, there was no showing that the interest of justice would be furthered by the exemption of the investigating officers from the sequestration rule. Louisiana law, unlike the Federal Rules of Evidence, does not envision the presence of a testifying investigative agent at the counsel table throughout the trial. Although federal courts commonly allowed this practice in federal criminal trials [see United States v. Infanzon, 235 F.2d 318 (2d Cir. 1956)], and the practice was approved by Congress in the adoption of the Federal Rules of Evidence [see F.R.Ev. 615(2); see also Senate report reproduced in Moore's Federal Practice Rules Pamphlet, Federal Rules of Evidence (1975)], the Louisiana Legislature has not approved such a practice. We decline to condone the practice, absent either a specific legislative expression or a showing that the interest of justice requires the presence of a testifying investigative agent in a particular case. We therefore hold that a juvenile is entitled to have witnesses sequestered at an adjudication hearing in the absence of a showing of good cause for exempting a particular witness from the order.[4] Thus, the trial court erred in exempting the deputies from the rule of sequestration without requiring the prosecutor to establish good cause for the exemptions.
Nevertheless, although two deputies were permitted to remain in the courtroom despite the requested sequestration, they subsequently testified primarily to rebut allegations of coercion relating to statements made by the defendants.[5] Inasmuch as the deputies did not give factual testimony relating to the incident behind the levee, their presence in the courtroom during the testimony of the fact witnesses does not require reversal.

III.
Defendants further contend the trial court committed error in improperly restricting their cross-examination of state witnesses by defense counsel.
Two of the juveniles (Giangrosso and Gros) were represented by Mr. Vega, *713 and the third (Hood) was represented by a different lawyer, Mr. Robert. Both lawyers were clearly entitled to cross-examine fully on behalf of their respective clients all witnesses presented by the state. C.J.P. art. 70 accords to each juvenile, against whom a petition has been filed, the right to cross-examine (with the aid of counsel) each witness called by the state. See also La.Const. Art. I, § 16 (1974).
The right of cross-examination is a significant legislatively and constitutionally protected right in a delinquency proceeding. C.J.P. art. 70; La.Const. Art. I, § 16 (1974); Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). A party is entitled to exercise the right of cross-examination personally and cannot be relegated to acceptance of the cross-examination conducted by another party (even one with a similar motive for cross-examination). See Williams v. Jahncke Service, 217 La. 1078, 48 So.2d 93 (1950), in which this court held that a child could not effectively be bound by the cross-examination of a witness conducted on behalf of the child's mother in a different proceeding, despite their similar motive for cross-examining the witness.[6]
We do not find, however, that the trial court unduly limited any defendants' right of cross-examination in the present case. While the first alleged rape victim was testifying, the trial court did attempt to restrict Mr. Robert's questioning in areas already covered by Mr. Vega, and counsel's complaint as to this instance was probably justified. However, the trial court not only went on to allow extensive cross-examination of this witness by Mr. Robert, but also allowed both counsel to recall this witness (and the other two complaining witnesses) for additional cross-examination during defendants' case-in-chief.
In the other instances pointed out by counsel as undue restriction on cross-examination, the trial court merely disallowed repetition of the same question that had been asked several times previously by one or both counsel. Trial courts must be accorded some discretion in limiting the examination of witnesses. We have examined the record as a whole, and we do not find that the trial judge abused his discretion or that any defendant was deprived of his right to effective cross-examination or his right to a fair trial in this regard.

IV.
Defendants next contend that the evidence was insufficient to support the adjudication of delinquency.
The court of appeal discussed in detail the testimony of the witnesses. The testimony of the three girls provided essentially the same version of the two rapes with the use of force. The fourth boy in the crowd, Brian Theriot, on direct examination gave testimony contradictory to that of the girls. However, on cross-examination he was confronted with a written statement he had given on the night of the incident, which supported the girls' version, and when cautioned as to perjury, he admitted the statements about "forcing girls" and about screaming from inside the van sounding like rape.
Furthermore, the man who lived across the levee from the place where the incident occurred testified that two of the girls ran to his house and used his telephone to call the sheriff's office and that they all started crying when the third girl arrived with her clothing all "rumpled up" and sand all over her. While none of the girls specifically used the word "rape" in talking to him, their actions were consistent with the occurrence of that crime. Finally, the coroner testified that his examination revealed *714 tearing of the vaginal area and "definite evidence of trauma".
We conclude that a rational trier of fact could have found, from the evidence adduced at trial, proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, the evidence was sufficient to support the adjudication. State in the Interest of Baptiste, above.

V.
Defendants' final contention is that they were prejudiced by the trial court's denial of their request for examination of Brian Theriot's recorded statement.
Theriot was a defense witness who, as noted above, provided exculpatory evidence on direct examination. However, his testimony was substantially impeached on cross-examination by use of his answers (which he admitted giving) in a recorded statement. Defense counsel then requested that he be allowed to examine the statement for exculpatory evidence, but the prosecutor refused, and the trial judge declined to order production.
Arguably the trial judge should at least have conducted an in camera inspection of the statement.[7] The refusal to do so, however, cannot be viewed as prejudicial in this case. The statement was that of a defense witness whose in-court testimony was totally favorable to defendants. It is difficult to imagine how defendants would have been aided by discovery at that time of anything favorable in the pretrial statement of the witness who testified at trial. Since the prosecutor excerpted only the unfavorable and inconsistent answers from the statement, one must logically assume that the remainder of the statement was favorable to defendants and was consistent with Theriot's testimony on direct examination. We conclude there was no prejudice in the ruling.
The adjudications and dispositions are affirmed.
NOTES
[1] Giangrosso and Gros were committed to the Department of Corrections for an indeterminate period not to exceed their 21st birthday. Hood was committed to the Department of Corrections for a determinate period of one year and six months.
[2] The court also offered to exempt an investigator for the defense.
[3] For example, in both Carter and Lewis the court reversed convictions, even under prior law which left the matter of sequestration to the discretion of the trial court. Both cases involved the trial court's permitting testifying investigative agents to remain in the courtroom.

Former R.S. 15:371 provided that the court "may" sequester the witnesses. The matter was left to the sound discretion of the trial court, and reversal was only required upon a showing of abuse of discretion and prejudice to the defendant. See State v. Ferguson, 240 La. 593, 124 So.2d 558 (1961) (a case factually similar to this case); State v. Davis, 241 La. 974, 132 So.2d 866 (1961); State v. Barton, 207 La. 820, 22 So.2d 183 (1945).
Although the comment following C.Cr.P. art. 764 calls the article a "stylistic revision" of the former R.S. 15:371, it is apparent from the language of art. 764 that the trial court "shall" sequester witnesses upon motion of either party. It is no longer a matter left to the discretion of the court. See State v. Simpson, 259 La. 94, 249 So.2d 536 (1971).
[4] The right to have witnesses sequestered is an important right which implements the use of cross-examination as a truth-testing device. As noted by the advisory committee for the Federal Rules of Evidence, "[t]he efficacy of excluding or sequestering witnesses has long been recognized as a means of discouraging and exposing fabrication, inaccuracy, and collusion". Advisory Committee's Note, F.R.Ev. 615. See also 6 Wigmore, Evidence §§ 1837-1838 (Chadbourn rev. 1976); State v. Lewis, above.
[5] The statements were excluded from evidence by pretrial stipulation, because of non-compliance with Dino warnings. See State in the Interest of Dino, 359 So.2d 586 (La.1978). However, when the defendants took the stand after the state rested, the statements (if proved to have been given voluntarily) could be used for impeachment purposes. See State v. Kent, 371 So.2d 1319 (La.1979). In their testimony defendants claimed the statements were coerced, and the deputies were called to establish voluntariness.
[6] The Williams case involved the use of prior recorded testimony, where the witness initially examined was unavailable for testimony in the trial of the later suit. The discussion in Williams is nevertheless helpful, because it reveals this court's recognition of the importance of the party's personal right to cross-examine, even in a civil proceeding. See F.R.Ev. 804(b)(1). This logic is far more persuasive in a criminal or delinquency proceeding, where the right is constitutionally protected.
[7] The defense did not request an in camera inspection by the court. Neither did the defense seek, by motion for new trial, to obtain the statement after adjudication and to establish exculpatory value or prejudice. See State v. Sylvester, 388 So.2d 1155 (La.1980); see also State v. Robbins, 391 So.2d 1119 (La.1980) (Lemmon, J., concurring).