ORFINGER, Judge.
The issue before us is whether a city may, by subsequent legislation, impair or reduce benefits to which employees retired for disability are entitled under the pension ordinances in effect at the time of their retirement. The trial court held that the right of the retired employees became vested at the time of their retirement in accordance with the provisions of law in effect at that time, and that these benefits could not be impaired or reduced by subsequent legislation. The City appeals and we affirm.
The appellees are fourteen disabled police officers and firefighters who are recipients of disability pensions under the appellant City of Daytona Beach’s Police and Fire Department Pension Fund. On November 29, 1982, they petitioned the circuit court for a writ of mandamus seeking to compel the City to pay them certain disability benefits which the City had denied them pursuant to a 1982 amendment' to the City’s 1965 pension law which was adopted after they had been retired.
The current Police and Fire Department Pension Fund was created by Chapter 65-1443, Laws of Florida (1965), and provided a pension system for uniformed members of the Daytona Beach Police and Fire Departments to be administered by a board of trustees. The membership of the 1965 pension plan included “original” members and “new” members. An original member was defined by the ordinance as any permanent employee of the city who became a member *566 before July 1, 1965, as well as any former employee already retired under any prior plan applicable to policemen, detectives, or firemen. A new member, on the other hand, was any permanent employee who became a member of the plan after its effective date, July 1, 1965. The appellees were all hired by the city between 1966 and 1977, and thus were new members under the 1965 plan.
The original pension plan provided no disability benefits to “new members.” In 1974 the city amended its pension plan, as pertinent here, “to make the provisions of this [1965] pension fund relating to disability and death benefits of original members applicable to all new employees as of the effective date of this article and to give all new members the option to elect to come within its provisions.” The plan then set out the method for determining total and permanent disability and for subsequent re-examination to insure continued eligibility for disability pensions under the plan. The plan made specific provision for a reduction of pension benefits by the amount of Worker’s Compensation paid to the pensioner, and required covered members to contribute 2 percent of their annual base pay.
On October 1,1982, in response to continued pressure from its actuaries that the number of employees retiring because of disability was greater than had been anticipated, resulting in higher than anticipated demand on the fund, the city again amended the pension plan and added to the ordinance the provision which forms the basis for this controversy, viz:
(c) As to any new member, in addition to the offset in the amount of any Workers’ Compensation benefits payable under Section 2-40.3, City Code, there shall be an offset to be applied against disability benefits payable hereunder of an amount equal to seventy-five percent (75%) of family earned income and one hundred percent (100%) of social security disability income payments. For this purpose, family shall mean the member and his or her spouse. For this purpose earned income shall include the higher of all of the member’s or one-half (½) of all of the member’s family income (when that family income is from a joint venture with the member’s spouse or income earned by the member’s employment or other efforts is assigned or otherwise transferred to the spouse) subject to the Federal Old-Age, Survivors, and Disability Insurance taxes, disregarding the maximum social security wage base, including income that would be subject to such taxes except that the employer is not covered under social security and shall include social security disability insurance benefit payments. For this purpose social security disability insurance benefit payments shall mean those as provided for under 42 USCA Sections 402 and 423, as may be amended. The disabled member shall be required to submit verifiable copies of the portions of his and his spouse’s Federal income tax return and other documentation showing reportable income if so requested by the Board. This offset may be applied retroactively, but with any subsequent resulting reductions to be made in future benefit payments. Any member refusing to supply the required income tax returns shall have the disability benefit otherwise payable hereunder terminated and he shall no longer be considered a disabled member.
In sum, while the 1974 ordinance provided for offsetting only Worker’s Compensation benefits, the 1982 ordinance added additional offsets for earned income of the retired employee or his family, and for social security disability benefits.
The appellees were all retired as disabled after the 1974 amendment, but before the adoption of the 1982 amendment. We are concerned only with that provision of the 1982 amendment which purports to authorize the city to retroactively offset against the benefits of already retired employees the family earned income and the social *567 security disability income benefits, when no such offset was provided for in the law effective when these employees were retired.
It seems clear that whatever may be the right of the city to prospectively amend its retirement plan as to those employees who have not retired [see, Florida Sheriffs Association v. Department of Administration, Division of Retirement, 408 So.2d 1033 (Fla.1981) ], such right does not exist as to those employees who have already retired, because those rights became vested at the time of retirement. In State ex rel. Stringer v. Lee, 147 Fla. 37, 2 So.2d 127 (1941) the supreme court said:
The weight of authorities is to the effect that when a government by statute once establishes a compensation or a retirement system for its said officers or employees and provides in part the funds and means for administering it according to the terms thereof, and any such officer or employee contributes money over a period of years and the contributions are placed to the credit thereof and the officer or employee has served the public or government for the designated period of years, or while serving attains a certain age or becomes mentally or physically disabled while so serving, and when the conditions arise or occur upon which by the rules and regulations of the system the said officers or employees become eligible for retirement and to receive funds to be paid out of said compensation retirement fund and the said officers or employees have met all the requirements of the act creating the retirement system, then the said officers or employees have acquired a vested right under the terms of such statute which establishes a contractual relation which may not be affected or adversely altered by subsequent enactments. This rule in a general way is supported by the previous decisions of this court in Anders v. Nicholson, [111 Fla. 849, 150 So.2d 639] supra, and State ex rel. Holton v. City of Tampa, [119 Fla. 556, 159 So.2d 292] supra.
Id. 2 So.2d at 132-133.
This holding was reaffirmed in City of Jacksonville Beach v. O’Donald, 151 So.2d 430 (Fla.1963). There, the court held that a city employee at the time of his retirement had a vested right of contract in all pension benefits conferred upon him by the law then in effect, and his wife’s right to continued pension benefits on his death vested at the same time and thus could not be impaired by legislation reducing those benefits after his retirement. The court in O’Donald expressly noted that the earlier case of State ex rel. Holton v. City of Tampa, 119 Fla. 556, 159 So. 292 (1934) was limited to its own “peculiar” facts and that regardless, the facts as presented in Holton were so confusing “as to shed no light upon the troublesome problem” before the O’Donald court. “Certainly” the court stated, “the language [in Holton ] does not commit this court to a rule that a retirement plan can be so amended after one retires under it as to affect his rights.” Id. at 431.
That benefits under a retirement plan, whether voluntary or mandatory, vest at the time of retirement, has been made clear in Florida Sheriffs Association v. Department of Administration, supra, where the supreme court, after reviewing earlier cases on the subject said:
Although, by the foregoing decisions, this Court has stated that the legislature can alter retirement benefits of active employees, the Court has also expressly held that, whether in a voluntary or mandatory plan, once a participating member reaches retirement status, the benefits under the terms of the act in effect at the time of the employee’s retirement vest. The contractual relationship may not thereafter be affected or adversely altered by subsequent statutory enactments. City of Jacksonville Beach [v. State ex rel. O’Donald, 151 So.2d 430] State ex rel. Stringer v. Lee, *568 147 Fla. 37, 2 So.2d 127 (1941). [Emphasis supplied].
Id. at 1036.
Appellant attempts to distinguish the cited cases from this one by contending that disability pensions are different from length of service pensions and are thus susceptible to modification, even after retirement. Appellant cites City of West Palm Beach v. Holaday, 234 So.2d 24 (Fla. 4th DCA), affirmed, 240 So.2d 152 (Fla.1970) as support for its position, but that case does not support the city here. Hola-day merely held that where the pension ordinance made provision for a Worker’s Compensation offset against disability pensions, but made no such provision for length of service pensions, the city could not offset a Worker’s Compensation benefit against a length of service pension. Those circumstances do not exist here, where the only offset provided for in the ordinance was for Worker’s Compensation benefits paid to a retireant for service-connected disability, and which is not in contention here. Holaday indicates that the pension ordinance may provide for differences between disability pensions and length of service pensions, but the ordinance in effect here when appellees retired made no such distinction.
Similarly, cases cited by appellant which discuss when an employee is totally or permanently disabled [Shepard v. Department of Administration, 361 So.2d 208 (Fla. 1st DCA 1978) ]; whether a plan may be amended as to employees who are still employed and who have not satisfied any of the statutory conditions entitling them to pension benefits [Grady v. Division of Retirement 387 So.2d 419 (Fla. 1st DCA 1980) ];[1] or whether a city may offset outside income where the ordinance in effect at the time of retirement makes such provision, [State ex rel. Boehnlein v. Poland, 1 Ohio St.2d 179, 30 O.O. 2d 569, 205 N.E.2d 906 (1965); Berry v. City of Portsmouth, Virginia, 562 F.2d 307 (4th Cir.1977) ] are inapposite, because none of these facts or issues are involved here.
We hold, therefore, that when an employee has met all the requirements of the statute or ordinance creating the retirement system and has been retired, whether for length of service or for disability, under the appropriate rules and regulations providing for such retirement, such employees have acquired a vested right under the terms of such statute or ordinance which may not be affected or adversely altered by subsequent legislation. While the city is justifiably concerned with keeping its pension system actuarily sound, any mistakes or miscalculations as to the financial demands on the fund cannot be corrected by depriving those who have already retired of the benefits provided to them by the law in effect when they retired.
AFFIRMED.
COWART, J., and STROKER, R.J., Associate Judge, concur.

. Interestingly, Grady, though cited by the city, says in dictum that “[a] member of any plan has at the time of retirement a vested right of contract and all benefits accrued to him by the law then in effect.” Id. at 421.